UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDUARDO ANDERSON, | ) | |
| | ) | |
| Movant, | ) | 04 C 2381 |
| | ) | |
| v. | ) | |
| | ) | Honorable Charles R. Norgle |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondant. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Movant Eduardo Anderson's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. For the following reasons, the Motion is denied.

## I. INTRODUCTION

### A. Facts

By April 2002, Eduardo Anderson ("Anderson") had become acquainted with co-defendant Arthur Cleveland ("Cleveland") through transactions in which Cleveland had supplied Anderson with at least four gallons of mixtures containing phencyclidine ("PCP"), a Schedule III Narcotic Drug Controlled Substance. In April 2002, Anderson and Cleveland (collectively "Defendants") agreed to purchase phenylmagnesium bromide ("PB") from a certain individual. This individual was a cooperating witness ("CW") for the United States government. Anderson spoke with the CW over the telephone, and met with the CW to discuss the terms of the transaction. Defendants ultimately agreed to purchase a quantity of PB from the CW for

1

approximately $11,480. In late April 2002, Defendants met the CW in Chicago, and paid this individual approximately $4,000 as a down payment on the PB. On May 3, 2002, Defendants again met with the CW, paid the CW approximately $7,400, and received from the CW a box containing PB. Defendants intended to use the PB to manufacture wholesale quantities of PCP.

**B. Procedural History**

On May 30, 2002, the government filed a three count Superceding Indictment charging Defendants with knowingly and intentionally conspiring and agreeing to manufacture a controlled substance, namely in excess of one kilogram of mixtures containing PCP, in violation of 21 U.S.C. § 846. In addition, Cleveland was charged with knowingly and intentionally possessing a listed chemical, namely ethyl ether, knowing and having reasonable cause to believe that this chemical would be used to manufacture a controlled substance, namely PCP, in violation of 21 U.S.C. § 841(c)(2). Anderson was named only in Count Two of the Superceding Indictment. On November 1, 2002, Anderson signed a written Plea Agreement in which he agreed to plead guilty to Count Two.

The Plea Agreement contained, *inter alia*, the following provisions. Anderson admitted to the conduct described in part I A of this Opinion. The parties agreed to disagree as to the amount of PCP involved, and the corresponding offense level under the Federal Sentencing Guidelines ("Guidelines"). The government asserted that the amount of PCP accountable to Anderson was at least thirty kilograms, which would have resulted in a base offense level of thirty-eight under the Guidelines. Anderson asserted that the amount of PCP accountable to him was between ten and thirty kilograms, which would have resulted in a base offense level of thirty-six. Plea Ag., ¶ 6(b). The parties agreed that Anderson was safety valve eligible under

2

Guidelines section 5C1.2, and deserving of a three-level reduction for acceptance of responsibility. Id. at ¶ 6(c-e). In addition, Anderson indicated that he understood that the Count to which he would plead guilty carried a mandatory minimum sentence of ten years imprisonment and a maximum of life imprisonment. Id. at ¶ 8. Anderson also waived his right to direct appeal and his right to file a collateral attack on his sentence, except in a specific circumstance.

> The defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or its negotiation.

Id. at ¶ 12.

At sentencing, the court decided the issue of the amount of PCP involved in Anderson's favor. Beginning with a base offense level of thirty-six, the court gave Anderson a two-level safety valve reduction, and a three-level reduction for acceptance of responsibility. Anderson's adjusted offense level was therefore thirty-one. With a Criminal History Category of I, Anderson's Guideline range was 108-135 months. The court sentenced Anderson to the middle of this range, 120 months.

Anderson filed his Motion under § 2255 on April 1, 2004, and filed a Memorandum in Support of this Motion on February 14, 2005. After receiving transcripts of Anderson's plea colloquy and sentencing hearing, the government filed its Response to Defendant's Motion

Pursuant to 28 U.S.C. § 2255 on March 24, 2006. Anderson then filed a Traverse to Government's Response to Petitioner's Motion Pursuant to 28 U.S.C. § 2255 on May 12, 2006. The Motion is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is jurisdictional, of Constitutional magnitude, or there has been a "complete miscarriage of justice." See Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004). This statute states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255 ¶ 1. If the court determines that any of these grounds exists, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255 ¶ 2. In making that determination, the court must review the evidence and draw all reasonable inferences from it in a light most favorable to the Government. See United States v. Galati, 230 F.3d 254, 258 (7th Cir. 2000); Carnine v. United States, 974 F.2d 924, 928 (7th Cir. 1992).

Section 2255 petitions are subject to various bars, including that of procedural default. Section 2255 petitions are "'neither a recapitulation of nor a substitute for a direct appeal.'" McCleese v. United States, 75 F. 3d 1174, 1177 (7th Cir. 1996) (citations omitted). Therefore, a

§ 2255 motion cannot raise: (1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-Constitutional issues that could have been raised on direct appeal, but were not; and (3) Constitutional issues that were not raised on direct appeal. See Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994)).

There are two exceptions to the procedural default rule: (1) if the movant demonstrates cause for failing to raise the issue and actual prejudice resulting therefrom; or (2) the court's refusal to consider the Constitutional issue would result in a fundamental miscarriage of justice, which requires a showing of actual innocence. See Belford, 975 F.2d at 313 (collecting authority); see also McCleese, 75 F.3d at 1177-78 (discussing fundamental miscarriage of justice).

Apart from the above noted procedural bars, potential movants are prohibited from filing § 2255 motions where they have expressly agreed to waive their right to do so in their plea agreements. The Seventh Circuit approves of these waivers, with one limited exception. Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000) ("we reiterate that waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to sec. 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver") (quoting Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999)). In light of these principles, the court examines Anderson's Motion.

## B. Anderson Has Expressly Agreed to Waive His Right to File a § 2255 Motion

As the court has indicated in section I B of this Opinion, Anderson has expressly agreed to waive his right to file a § 2255 motion. Paragraph 12 of his Plea Agreement reads in part,

5

> The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or its negotiation.

The court first notes that Anderson has not made any claim that his attorney was ineffective "with respect to those discrete claims which relate directly to the negotiation of the waiver." See Jones, 167 F.3d at 1145. Anderson, though, asserts that because the court did not explain the consequences of paragraph 12 of the Plea Agreement to him during the plea colloquy, he did not knowingly or voluntarily agree to paragraph 12. Anderson argues that paragraph 12 of the plea agreement should therefore be waived, and he should be allowed to proceed with his § 2255 Motion. During the plea colloquy, however, Anderson admitted that he read the Plea Agreement, examined it with his attorney, and signed it voluntarily.

> THE COURT: Did you go over this written plea agreement with your attorney?
> THE DEFENDANT: Yes, sir.
> THE COURT: Did you read it?
> THE DEFENDANT: Yes, sir.
> THE COURT: And did you sign the last page of it?
> THE DEFENDANT: Yes, sir.
> THE COURT: Was your attorney available to discuss this written plea agreement and explain it to you and answer your questions?
> THE DEFENDANT: Yes, sir.
> THE COURT: Have you entered into this agreement voluntarily?
> THE DEFENDANT: Yes, sir.

Plea Colloquy, at 15. The court therefore finds that Anderson has knowingly and voluntarily waived his right to file a § 2255 Motion, and the court will enforce this waiver.

The court has thus determined dispositively that Anderson's § 2255 Motion is barred under the terms of his Plea Agreement. However, with an abundance of caution, the court will address this Motion on its merits.

## C. Anderson's Claims for Relief under § 2255

Anderson's pro se § 2255 Motion raises five claims for relief. All of these claims are based on the assertion that Anderson's attorney was constitutionally ineffective. Anderson argues that his counsel was ineffective: (1) in failing to file a requested notice of appeal, (2) at the sentencing hearing, (3) in permitting Anderson to plead guilty to an allegedly "illegal sentence," (4) due to a conflict of interest, and (5) in failing to object to prosecutorial misconduct.

In order to establish that his counsel was ineffective, Anderson must "show that [his] counsel's performance was deficient, and that the deficiency prejudiced [his] defense." See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Prejudice is established by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Benefiel v. Davis, 357 F.3d 655, 662 (7th Cir. 2004) (quoting Strickland, 466 U.S. at 694). An ineffective assistance of counsel claim may be brought in a § 2255 motion, regardless of whether the claim was raised on appeal. Massaro v. United States, 538 U.S. 500, 504 (2003).

When a court reviews an ineffective assistance of counsel claim, the court's review is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689). There is therefore a strong presumption that Anderson's attorney performed reasonably. See Strickland, 466 U.S. at 690;

see also Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). To succeed in his claim, Anderson must show "errors so serious that counsel was not functioning as 'counsel' guaranteed [to him] by the Sixth Amendment . . . ." See Holman, 314 F.3d 839 (quoting Strickland, 466 U.S. at 687).

### 1. *Failure to File a Notice of Appeal*

Anderson asserts that his attorney was constitutionally ineffective in failing to file a notice of appeal when instructed to do so. In support of this assertion, Anderson argues that the waiver of his right to appeal became "null" when Anderson was sentenced beyond the statutory maximum. Anderson points to 21 U.S.C. § 841 (b)(1)(D), which indicates that "in the case of any controlled substance in Schedule III," such as PCP, the maximum sentence is five years imprisonment. This argument, however, ignores the plain language of 21 U.S.C. § 841 (b)(1)(A)(iv), which provides for a minimum of ten years imprisonment, and a maximum of life, where a defendant is responsible for one hundred grams or more of pure PCP, or one kilogram or more of a mixture containing PCP. Anderson admitted in his Plea Agreement to his involvement with at least four gallons (15.14 kilograms) of mixtures containing PCP. There is thus no question that Anderson faced a statutory range of between ten years and life imprisonment. Anderson's sentence of 120 months did not exceed the statutory maximum, and his waiver of his right to appeal did not become "null" upon his receiving this sentence. Anderson's attorney was therefore not constitutionally ineffective in refusing to file an appeal.[1] See Wiggins, 539 U.S. at 521.

---

[1] To the extent that 21 U.S.C. § 841(b)(1)(A)(iv) and 21 U.S.C. § 841 (b)(1)(D) appear to be in disharmony, standard principles of statutory construction require that the court reconcile these provisions so as not to create a conflict. See La. Public Serv. Com. v. FCC, 476 U.S. 355, 370 (1986). The court therefore construes 21 U.S.C. § 841 (b)(1)(D) to apply only where a defendant is responsible for less than one hundred grams of pure PCP, or less than one kilogram of mixtures containing PCP.

8

## 2. Sentencing

Anderson asserts that his counsel was ineffective at sentencing for failing to pursue an argument about drug quantity. The fact is, defense counsel won the only argument that was left by the parties' Plea Agreement: whether Anderson was responsible for a quantity of drugs that would have placed him at a base offense level of thirty-six or thirty-eight. See Plea Ag., ¶ 6(b); Sentencing Hearing, at 3-9. The court determined that Anderson was responsible for a quantity of PCP that placed him at level thirty-six, with a Guideline range of 108 to 135 months, rather than level thirty-eight, with a Guideline range of 135 to 168 months. Counsel's winning argument at sentencing saved Anderson from a potential sentence of 168 months, rather than the 120 months he ultimately received. This performance can hardly be termed ineffective. See Wiggins, 539 U.S. at 521.

## 3. Plea Hearing

Anderson asserts that his attorney allowed him to plead guilty to an "illegal sentence," because counsel failed to present an expert witness to estimate the "yield factors" of the quantity of phenylmagnesium bromide Defendants purchased from the CW. This argument is frivolous. In his Plea Agreement, Anderson admitted to having received at least four gallons (over 15 kilograms) of mixtures containing PCP from Cleveland. Plea Ag., ¶ 5. Anderson then admitted to this conduct again at his plea colloquy. Plea Colloquy, 9-10. Anderson therefore did not plead guilty to an "illegal sentence."

## 4. Conflict of Interest

Anderson asserts that his attorney was conflicted because he also represented Arnold Chapman, a Defendant in a related criminal case, and a potential witness against Anderson. This

argument is also frivolous. The docket sheet for Chapman's case, United States v. Chapman, 02 CR 173, shows that Chapman was represented by John M. Beal, Michael P. Gillespie, and Terence Patrick Gillespie during these proceedings. Anderson's attorney, Stanley Hill, never filed an appearance in 02 CR 173.

### 5. *Prosecutorial Misconduct*

Finally, Anderson asserts that his attorney was ineffective for failing to object to prosecutorial misconduct. This argument is, again, frivolous. Anderson argues that the government engaged in misconduct when it "misled" the probation department by suggesting that he had received at least four gallons of PCP. Anderson admitted, in paragraph five of his Plea Agreement, to receiving at least four gallons of PCP from Cleveland. At his Plea Hearing, the government recited the facts surrounding the evidence in this case, including these transactions. The following exchange then took place between the court and Anderson.

> THE COURT: Mr. Hill, are these the facts upon which your client is pleading guilty?
> MR. HILL: Yes.
> THE COURT: Mr. Anderson, did you hear what your attorney, Mr. Hill, just said?
> THE DEFENDANT: Yes, sir.
> THE COURT: Did you also hear what the government said the evidence would show if this case proceeded to trial?
> THE DEFENDANT: Yes, sir.
> THE COURT: Are these the facts upon which you are pleading guilty?
> THE DEFENDANT: Yes, sir.
> THE COURT: To put it another way, is that what you did?
> THE DEFENDANT: Yes, sir.

Plea Colloquy, 9-10. The government therefore did not engage in misconduct, and Anderson's counsel was not ineffective for failing to object to any alleged misconduct.

### D. Anderson's Request for an Evidentiary Hearing

Finally, Anderson requests an evidentiary hearing in order to examine the actions of his counsel and the government. Evidentiary hearings are not required if the § 2255 "motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 ¶ 2; see also Bruce v. United States, 256 F.3d 592, 597 (7th Cir. 2001); Daniels v. United States, 54 F.3d 290, 293 (7th Cir 1995). In this case, all of Anderson's ineffective assistance of counsel claims fall well short of the Strickland standard, and several are plainly frivolous, including the claim in which he alleges prosecutorial misconduct. The record thus conclusively shows that Anderson is entitled to no relief under § 2255. Anderson's request for an evidentiary hearing is therefore denied.

### III. CONCLUSION

For the foregoing reasons, Anderson's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: May 26, 2006